**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**

**Case No. 8:26-cv-705-WFJ/AAS**

DASSAULT SYSTEMES SOLIDWORDS CORPORATION,
a Delaware corporation,

Plaintiff,

v.

KITCHENERY, INC.,
a Florida corporation,
AKSHAY BHUVA, and
LUIS ISAZA,

Defendants.

---

**DEFENDANTS' MOTION FOR EXTENSION OF TIME TO RESPOND TO PLAINTIFF'S DISCOVERY**

Defendants, Kitchenery, Inc., Akshay Bhuva, and Luis Isaza, pursuant to Fed. R. Civ. P. 6, move for an extension of time *unc pro tunc* to respond to plaintiff's discovery requests which came due during the period of a change in defense counsel.

## TABLE OF CONTENTS

Page

**I. INTRODUCTION ..... 2**
**II. FACTS & PROCEDURAL HISTORY ..... 3**
**III. ARGUMENT ..... 6**
**A. Legal framework for extensions of time after a deadline has passed ..... 6**
**B. The Pioneer factors ..... 8**
*1. There is no danger of prejudice to Dassault Systemes ..... 8*
*2. The impact of an extension on this proceeding is minimal ..... 9*
*3. The delay in serving responses to Dassault's discovery was the result of a combination of factors related to the representation ..... 9*
*4. Defendants' counsel acted in good faith ..... 11*
**C. Weighing the Pioneer factors ..... 11**
**IV. CONCLUSION ..... 12**

## I. INTRODUCTION

This motion seeks to invoke the Court's equitable powers to provide defendants with an extension of time to serve their discovery responses to plaintiff Dassault Systemes' interrogatories, requests for production, and requests for admissions. Plaintiff's counsel has repeatedly shirked from addressing the issue with new defense counsel for more than a month and recently reneged on its oral agreement with predecessor counsel.

At the time the responses were pending and due, defendants' counsel was in the process of withdrawing from representation, and defendants were in the process of seeking new counsel. Both predecessor and new counsel

attempted to timely address the outstanding discovery with plaintiff's counsel, but to no avail. This motion follows.

Dassault was not and will not be prejudiced by providing an extension of time under the circumstances of a change in counsel while there is ample time prior to the discovery deadline in this case. It should also not be rewarded for its failure to timely discuss the issue with defense counsel nor should the Court condone what appears to be gameplaying.[1]

The Court would not abuse its discretion in granting this motion.

## II. FACTS & PROCEDURAL HISTORY

This is a copyright infringement case in which Dassault Systemes reneged on its pre-suit settlement agreement to resolve this matter, and asserts it is entitled to nearly $1M in damages for Kitchenery's purchase of a used computer.

On May 26, 2026, the Court entered its case management and scheduling order, setting the discovery deadline as April 12, 2027. [DE 16].

The defendants were originally represented by Maria Burbridge, who practiced as a solo lawyer. Decl. of Maria Burbridge, Exhibit A.

On June 22, 2026, Dassault Systems served discovery requests to the defendants, including interrogatories, requests for production, and request for

[1] Moreover, defendants reserve their right to object to needless motion practice should plaintiff seek to claim any attorney's fees from defendants.

admissions.

Approximately two weeks later, Attorney Burbridge was offered, and accepted, new employment with a firm that elected not to take on this case and the defendants as clients. Id. Accordingly, Attorney Burbridge diligently sought to contact the primary plaintiff's counsel, Jeremiah Foley, to discuss her withdrawal from the suit and address matters respecting the then-pending discovery requests. Id. Despite three different attempts to reach Mr. Foley during the week of July 20, 2026, he did not respond to those multiple inquiries until Friday, July 24, 2026, by email to Ms. Burbridge. Id.

Earlier, on July 23, 2026, the undersigned had emailed Mr. Foley regarding possible retention in the matter, and raised the discovery issue. Declaration of Griffin Klema, Exhibit B at ¶ and B-1. Mr. Foley never responded to that message.

Instead, he emailed Ms. Burbridge, acknowledging the undersigned's possible retention in this matter as substitute counsel, with him questioning whether defense counsel was "legitimate" and without directly addressing the discovery matter. Decl. of Burbridge, Ex. A at ¶ 5. Ms. Burbridge responded in writing, again reiterating her effort to confer respecting extension of time for the defendants to respond to plaintiff's discovery. Id. Mr. Foley and Ms. Burbridge then spoke by telephone on July 30, 2026, during which call Mr. Foley orally agreed to the extension of time. Id. at ¶ 6.

Ms. Burbridge then moved, unopposed, to withdraw as counsel for defendants, [DE 18], which the Court then granted, [DE 19].

On August 29,026, the undersigned entered his appearance on behalf of defendant Kitchenery, Inc. [DE 20].[2] On that same date, a further email was sent to plaintiff's counsel respecting the timing of defendants' discovery responses. Ex. B at ¶ 4. By that time, defendant's new counsel was advised by Ms. Burbridge of Mr. Foley's oral agreement regarding the extension, and consequently, reduced that fact to writing to plaintiff's counsel. Id. No response was forthcoming, and therefore the undersigned then contacted each listed plaintiff's counsel by telephone on September 3, 2026. Mr. Erik Johanson answered, indicating he did not have authority to provide the extension, and advised that defense counsel should contact Messrs. Foley and Forbis. Id. at ¶ 5. Attempts were then made to each of them by telephone, and Mr. Foley's voicemailbox was full. Id. at ¶ 6. A voicemail was then left for Mr. Forbis. Id.

On September 3, 2026, Mr. Foley responded by email reneging his prior oral agreement, stating "[t]here has been no agreement regarding an extension of time to answer the discovery responses." Id. at ¶ A follow up email requesting clarification on whether Dassault Systemes opposed an extension went unanswered.

---

[2] As of the date of this motion, the undersigned has enlarged his representation to also include the other two individual defendants. Messrs. Akshay Bhuva and Luis Isaza.

On Stember 4, 2026, Mr. Foley finally contacted the undersigned by telephone, asserted there was no good cause for the extension, and thus Dassault Systemes opposes providing the undersigned new counsel additional time to prepare responses to the discovery.

## III. ARGUMENT

### A. Legal framework for extensions of time after a deadline has passed

Where "the time has expired" for complying with a deadline, "the court may, for good cause, extend the time" on motion "if the party failed to act because of excusable neglect." Fed. R. Civ. P. 6(b)(1)(B).

Courts consider various factors in determining whether a party's delay was the result of excusable neglect, including: (1) the danger of prejudice to the other party, (2) the length of the delay and its potential impact on judicial proceedings, (3) the reason for the delay, including whether it was within the reasonable control of the movant, and (4) whether the movant acted in good faith. Pioneer Inv. Servs. Co. v. Brunswick Assocs. L.P., 507 U.S. 380, 388 (1993).

The Supreme Court has said there is a "flexible understanding" to the meaning of "excusable neglect." Pioneer, 507 U.S. at 389. In Pioneer, where the Court addressed the meaning of "excusable neglect" as found in Federal Rule of Bankruptcy Procedure 9006(b)(1), it noted the differing policies between

Chapter 11 and Chapter 7 of the bankruptcy code. Id. In doing so, it has empowered district judges to follow "differing policies" that might underlie an equitable analysis of excusable neglect. Cf. id. The Court ultimately held that excusable neglect "is not limited to situations where the failure to timely file is due to circumstances beyond the control of the filer," Pioneer, 507 U.S. at 386, but embodies "a somewhat 'elastic concept.'" Id. at 392. Courts are therefore "permitted, where appropriate, to accept late filings caused by inadvertence, mistake, or carelessness" *in addition to* "circumstances beyond the party's control." Id. at 388. It also observed that bankruptcy "Rule 9006(b)(1) was patterned after Rule 6(b) of" [the Federal] Rules [of Civil Procedure]," id. at 391, and the Eleventh Circuit follows Pioneer in the Rule 6(b) context, Advanced Estimating System, Inc. v. Riney, 130 F.3d 996 (11th Cir. 1997).

"Excusable neglect is generally an 'equitable inquiry' based upon the particular circumstances of the case." Conn. State Dental Ass'n v. Anthem Health Plans, Inc., 591 F.3d 1337, 1355 (11th Cir. 2009). That includes "situations in which the failure to comply with a filing deadline is attributable to negligence." Id.

The Eleventh Circuit would review this Court's decision to extend the time for abuse of discretion. See Cheney v. Anchor Glass Container Corp., 71 F.3d 848 (11th Cir. 1996).

**B. The Pioneer factors**

In evaluating a Rule 6(b) request, the following are "pertinent factors to guide a court's analysis: 'the danger of prejudice to the nonmovant, the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith.'" United States v. Beaufils, 160 F.4th 1147 (11th Cir. 2025) (quoting Riney). When the Pioneer factors are applied to the facts here, equity weighs in favor of granting the defendants an extension of time to respond to plaintiff's written discovery. Granting such an extension would not be unreasonable or an abuse of discretion.

*1. There is no danger of prejudice to Dassault Systemes*

First, there is no danger of prejudice to plaintiff Dassault Systemes, a well-heeled international software company experienced with federal court litigation. This is the first time the defendants have requested an extension, and they do not anticipate a further one would be necessary beyond the proposed deadline of September 30, 2026.

This is also not a complex case. At its core, it is about alleged copyright infringement for the purchase of a used computer. While the parties anticipate discovery not only from each other, but also third parties like eBay and the underlying seller of the computer, the discovery deadline is more than eight months away: April 12, 2027. [DE 16]. Dassault served its discovery requests

one month following entry of the case management order, and it has been diligent in prosecuting its case. For their part, defendants have likewise been diligent, and were faced with the difficult timing of a change in counsel when the discovery responses needed to be prepared and served. New defense counsel needs some time to prepare the responses, and that little additional time is not substantial. There is no prejudice to Dassault from the extension of time, and this factor weighs in favor of granting the motion.

2. *The impact of an extension on this proceeding is minimal*

For the same reasons, the impact of what amounts to a 2-month extension of time to accommodate defendants' change in representation is minimal. Dassault has ample time to continue to develop its case prior to the discovery deadline. The second factor also weighs in favor of granting the motion.

3. *The delay in serving responses to Dassault's discovery was the result of a combination of factors related to the representation*

Defendants were served with Dassault's interrogatories, requests for production, and requests for admission on June 22, 2026. The deadline for the defendants' responses was thus July 22, 2026.

During that 30-day window of time, predecessor plaintiff's counsel was in the process of withdrawing from the representation, and which also included a significant national holiday (July 4). Ms. Burbridge was offered a new

position in the beginning of July. Ex. A. Her onboarding with her new firm included its evaluation of whether it would continue on representing the defendants in this action. Id. at ¶ 3. That clearing of conflicts from Ms. Burbridge's book of business and the new firm's partners' decisions to take on only some of those clients took time, and that process concluded approximately two weeks later in mid-July. Id. at ¶ 4. Shortly the firm's decision that it would not continue representing the defendants in this action, Ms. Burbridge then sought to address her withdrawal and the timing of the then-pending discovery responses with plaintiff's counsel. Id. at ¶ 5.

Plaintiff's counsel was and continues to be difficult to reach to discuss these matters. See Ex. A and Ex. B. Ms. Burbridge tried on three separate occasions to reach the primary handling attorney in this matter, Jeremiah Foley. She left voicemails each time. Ex. A at ¶ 5. Mr. Foley responded only after the July 22, 2026, deadline. Id. at ¶ 6. Mr. Foley also acknowledged incoming counsel to Ms. Burbridge, but never responded to Mr. Klema. Id. at ¶ 5. Despite all that, Mr. Foley did agree, during his telephone call with Ms. Burbridge on July 30, 2026, that Dassault Systemes would agree to an extension of time given the change in defense counsel. Id. at ¶ 6. As a result of that oral representation, defendants did not seek formal motion practice with the court. Id. at ¶ 7.

During the entire time, defendants have been diligent in seeking to

confer with plaintiff's counsel respecting the timing of their discovery responses. Their conduct was entirely reasonable given the change in counsel that was occurring during and shortly after the discovery responses came due. For its part, plaintiff's counsel's availability and responses were intermittent at best, and defendants reasonably relied on Mr. Foley's oral agreement.

The third factor weighs in favor of granting the extension of time.

4. *Defendants' counsel acted in good faith*

Defendants' counsel, both Ms. Burbridge and Mr. Klema, were diligent in their efforts to address the timing of the defendants' discovery responses. Ms. Burbridge relied in good faith on Mr. Foley's oral agreement, though Mr. Foley now apparently takes the position that he made no such agreement based on the last conferral prior to filing this motion. Given the lack of accessibility of plaintiffs' counsel combined with the defendants' diligent efforts to secure new counsel, they and their lawyers have always acted in good faith. The fourth factor also weighs in favor of granting them an extension of time.

**C. Weighing the Pioneer factors**

"A district court best knows the impact" that a party's deadline "error has on the court's operation and calendar[,] … the attorney and his motives, the circumstances of the case and the judicial economy of excusing the neglect." United States v. Brown, 133 F.3d 993, 997 (7th Cir. 1998). Indeed, it can be an

abuse of discretion not to grant an extension of time where there is a "minimal degree of delay" with a reasonable explanation for that delay, "the lack of impact on the judicial proceedings" as well as "lack of bad faith." Cheney, 71 F.3d at 850 (reversing district court's denial of extension of time).

Here, the impact of extending the deadline to permit new counsel time to collect the relevant information needed to respond to the discovery requests, generally come up to speed with litigation, and prepare any necessary objections is minimal given the state of the litigation early in the discovery period. Additionally, the written vagueness combined with a more definitive oral representation seemingly allowing for agreement among counsel for the extension should not be condoned. Plaintiff's primary counsel, being Michigan lawyers, may be unfamiliar with practices in the Middle District of Florida that requires that discovery "should be practiced with a spirit of cooperation and civility." Additionally, this District's Discovery Practice Manual further requires that lawyers "shall reasonably attempt to accommodate the schedules of opposing lawyers." Id. at § I.A.2. That cooperation, reasonableness, and accommodation has not been forthcoming. The motion should be granted.

## IV. CONCLUSION

The Court should grant this motion for extension of time, and permit defendants to serve their responses to plaintiff's discovery not later than

September 30, 2026. The court would not abuse its discretion in granting the extension, and may in fact reversibly err on this record if an extension is not provided.

**WHEREFORE**, defendants Kitchenery, Inc., Akshay Bhuva and Luis Isaza request the Court:

a) grant this motion;

b) exercise its equitable discretion and allow defendants to serve their discovery responses out of time;

c) set the deadline for serving their responses as September 30, 2026; and

d) for such further relief as the Court deems just and proper.

## CERTIFICATE OF COUNSEL

Counsel for the movant certifies that he made reasonable efforts to confer with all parties or non-parties who may be affected by the relief sought in this motion by email on August 29, 2026, and received no response. I attempted to follow up with plaintiff's counsel by telephone on September 2, 2026, discussing the relief with Erik Johanson, who deferred ty Messrs. Glenn Forbis and Jeremiah Foley, Mr. Foley's voicemail box being full, and leaving a voicemail with Mr. Forbis. I then emailed all counsel for plaintiff immediately

thereafter, and received a response from Mr. Foley who was non-specific as to plaintiff's position. On September 4, 2026, Mr. Foley finally contacted me by telephone, refuting that good cause existed, and opposing the relief sought herein.

__/s/ Griffin Klema________
Griffin C. Klema, Esq.
Fla. Bar No. 100279
Griffin@KlemaLaw.com
**Klema Law, P.L.**
PO Box 172381
Tampa, FL 33672
420 W. Kennedy Boulevard
Tampa, FL 33606
Telephone: 202-713-5292
*Counsel for Defendant Kitchenery, Inc.*