**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**

**Case No. 8:26-cv-705-WFJ/AAS**

DASSAULT SYSTEMES SOLIDWORDS CORPORATION,
a Delaware corporation,

Plaintiff,

v.

KITCHENERY, INC.,
a Florida corporation,
AKSHAY BHUVA, and
LUIS ISAZA,

Defendants.

---

# [PROPOSED] AMENDED ANSWER AND AFFIRMATIVE DEFENSES OF DEFENDANT LUIS ISAZA WITH JURY DEMAND

Defendant, Luis Isaza, by and through his attorney, Griffin Klema, Esq., and pursuant to Fed. R. Civ. P. 12, answers[1] plaintiff's complaint, [DE 1].

## INTRODUCTION

This action is an overzealous attempt to punish a recent USF graduate as well as the startup company and company's owner for their innocent use of software they were told was legitimate and relied in good faith on those sellers.

---

[1] This pleading is being provided solely on the basis that a proposed pleading must be submitted together with any motion for leave to file an amended pleading under Rule 15. However, to the extent the Court dismisses the complaint, defendant Isaza retains his right to challenge this Court's personal jurisdiction over him.

For months plaintiff Dassault Systems SolidWorks Corporation laid back in wait, intentionally letting the clock run for the explicit purpose of creating illusory damages it could then use, *in terrorem*, to extort a massive settlement rather than promptly contacting the alleged offenders to address possible unlicensed software and resolving the matter fairly. Dassault's approach is in the vein of a copyright troll, unlawfully demanding $1M in damages for software that it licenses for approximately $3,000.

For the reasons articulated in defendants' motion to strike plaintiff's complaint, certain allegations are difficult if not impossible to respond to. Nevertheless, Kitchenery and Akshay Bhuva jointly answer the complaint and assert affirmative defenses.

## ANSWER

Defendant **admits** the truth of the allegations contained in paragraphs 2, 3, 7, 10, 21, 27, 28, 32, 33, 34, 38, 63, and 64 of the complaint, but expressly deny any wrongdoing that might be implied by the allegations and denies any implication or aspect that he was an employee of Kitchenery.

Defendant **lacks knowledge** or information sufficient to form a belief about the truth of the allegations contained in paragraphs 4, 8, 11, 12, 13, 14, 15, 16, 17, 20, 23, 24, 26, 29, 35, 36, 39, 42, 43, 46, 48, 49, 50, 51, 52, 53, 54, 55, 56, 57, 58, 62, 66, 70, 71, 73, 74, 77, 78, 83, 84, 92, 96, 97, 98, 101, 102, 115,

120, 121, 122, 126, 128, 131, 140, 142, and 145 of the complaint and therefore deny same.

With regard to the allegations contained in paragraphs 1, 5,[2] and 6 of the complaint, defendant admits he is an adult, and the litigation arises under the Copyright Act, but expressly denies that the Court has subject matter jurisdiction to the extent any registration is invalid, and denies the court has personal jurisdiction over him. Defendant denies the remainder of the allegations contained in those paragraphs of the complaint.

With regard to the allegations contained in paragraphs 30, 31, and 37, these are identical duplicates of other paragraphs, and defendant reassert their responses to them.

With regard to the allegations contained in paragraph 60, it is an incomplete and incoherent sentence, and therefore defendant denies same.

Paragraphs 100, 114, and 125 of the complaint are impermissible shotgun re-incorporation paragraphs, for which defendant re-adopts his responses.

With respect to the allegations contained in paragraphs 61, 67, 68, 69, 72, 75, 76, 79, 80, 81, 82, 85, 86, 87, 88, 89, 90, 91, 93, 94, 95, 99, 103, 104, 105, 106, 107, 108, 109, 110, 111, 112, 117, 118, 119, 127, 129, 130, 132, 133, 134,

---

[2] There are actually two paragraphs numbered "5" in the complaint. Other than what is explicitly admitted here, the remainder is denied.

135, 136, 137, 138, 139, 141, 143, and 144, each of them contain vague allegations comprising "at least one of" as well as disjunctive and conjunctive assertions of "and/or" such that it is impossible to determine the precise scope of what the allegation is, either as to the identity of the person or the conduct (i.e. individual versus joint or concerted action). Consequently, defendant is unable to respond to these allegations in any meaningful way. Accordingly, he denies these allegations.

Defendant **denies** the allegations contained in paragraphs 9, 18, 19, 22, 25, 40, 41, 44, 45, 47, 59, 65,[3] 113, 116, 123, 124, and 146 of the complaint.

Defendant **denies** that plaintiff is entitled to any relief whatsoever in this action. Defendant specifically **denies** all allegations, if any, and conclusions of law, if any, to which he did not specifically respond in this answer to plaintiff's complaint.

Luis Isaza demands a trial by jury.

---

[3] This allegation is vague, as it is stated in the present tense, without any temporal limitations. It is therefore denied.

## DEFENSES AND AFFIRMATIVE DEFENSES OF LUIS ISAZA

1. **Copyright misuse (trolling).** Dassault has and continues to misuse its copyrights beyond the rights that the Copyright Act permits. As a result of its misuse, as a matter of equity it cannot enforce its copyrights. E.g., Lasercomb America, Inc. v. Reynolds, 911 F.2d 970 (4th Cir. 1990). First, Dassault intentionally allowed time to pass for the purpose of running up the amount it would attempt to claim as damages, for more than six months. Its calculated purpose was to extort an excessive settlement from Kitchenery by imaginary damages and, to the extent actual, such damages were avoidable. Dassault claimed its damages were $57,727 after sitting by and passively waiting for enough time to elapse for the purpose of then seeking to obtain an exaggerated settlement far above the fair and reasonable value of its software. That conduct has continued through this litigation, to the point of Dassault unlawfully claiming damages of nearly $1M. That sum is also duplicative damages, or is outright unsupported in law or fact, with the goal of preventing a resolution of the case so that its claimed damages can increase over time. Dassault also calls its enforcement staff "mediators" to give the false impression its conduct is either innocent or that Dassault is impartial. Yet those persons knowingly participate in the extortion scheme. Dassault has also employed persons who were not

lawyers—but who explicitly held themselves to be licensed attorneys—seeking to negotiate its extortionate demands. As further evidence of its misuse, Dassault stated in its purported negotiations that it wanted to "regularize" Kitchenery's use of its software, but then simultaneously *prevented* it from purchasing legitimate software so that on a going-forward basis Kitchenery could continue to do business, even while Kitchenery attempted to negotiate a resolution for the *past* alleged unlicensed use. That effectively interfered with Kitchenery's business operations in a tortious way. On information and belief, Kitchenery is not alone in that widespread conduct by Dassault, and on information and belief it is not alone in having its business disrupted by Dassault canceling its order of software post-purchase and interfering with the contractual relationship between alleged infringers and a Dassault software distributor. Further still, Dassault misuses its copyrights by imposing illegal tying of other services that are not copyrighted, such as its web services. In addition to all of the foregoing misuse, Dassault has now, in litigation through its lawyers, engaged in bad faith tactics with the goal of driving up the defendants' costs, including intentionally authoring a vague pleading with the goal of increasing discovery burdens on the defendants, failing to apprise itself of the law governing its pleading and this action, refusing to provide basic non-prejudicial courtesies on extensions of time, and saying one thing orally and

disclaiming the statement later. Indeed, that conduct is not unique to this case, where another of Dassault's targets, Keith Childress, was unlawfully raided by the FBI at the insistence of Dassault, exonerated, and during the ensuing civil litigation Dassault's counsel made oral promised that he never kept. Def.'s Reply, [DE 55 at 31-32] Dassault Systemes,SA v. Childress, no. 2:09-cv-10534 (E.D. Mich. Mar. 10, 2010) (recounting Glenn Forbis' conduct). The extortionary nature of Dassault's "gotcha" scheme is further reflected in its demand for confidentiality of its settlements—as a *plaintiff*—as well as failing to fully release its targets so it can maintain a Damoclean sword over them should it choose to reassert a part of the same controversy later. Stated differently, it offered an incomplete release that did not fully address the conduct it alleged and when Kitchenery sought to ensure parity between Dassaults claims and the scope of the release, Dassault rejected the settlement. These are just some of the things defendants are aware of which Dassault has done specifically to Kitchenery and on information and belief constitute a wider practice of misuse more broadly. Consequently, Dassault is equitably estopped from enforcing its copyrights, under either theory of infringement or circumvention.

2. **Waiver.** Plaintiff obtained the email addresses of defendant Isaza at the very first moment he used the software in 2023, and thus plaintiff had the means and ability to contact him regarding plaintiff's alleged use of

unlicensed software prior to his relationship with Kitchenery. Plaintiff knowingly and intentionally refrained from enforcing its rights by not contacting Isaza when it could have ended the alleged harm it was suffering by contacting him directly and immediately. Instead, plaintiff waited nearly 18 months to contact Isaza, running up the tab of its alleged infringement and contract damages before it finally made any contact with Kitchenery on August 29, 2024. It also knew, immediatley, that Isaza stopped using the software the following day, due to Kitchenery's immediate steps in response to Dassault's cease and desist letter. Kitchenery also advised Dassault that Isaza was not an employee, but rather an independent contractor that owned his own computer hardware and software. Dassault did not act on that information, and instead continued its pursuit of Kitchenery despite Kitchenery having no liability for the alleged infringement of Isaza, who was not under Kitchenery's control or supervision. After repeatedly emphasizing Isaza's separate, independent status apart from Kitchenery, Dassault finally contacted Isaza on July 30, 2025. And once it finally contacted Isaza, he immediately ceased using the second machine with software that both he and Kitchenery believed in good faith was licensed. Thus, had Dassault simply contacted Isaza at the earliest opportunity (i.e. before he even became associated with Kitchenery), the alleged infringement would have been short (days, at most) and its alleged damages

minimal. On information and belief, this pattern of Dassault not contacting known violators is done intentionally with the goal of waiting until those persons become associated with a business. Dassault had a right to enforce its rights against Isaza, but knowingly and voluntarily chose not to for more than 18 months. Accordingly, Dassault has waived its right to claim infringement, circumvention, or breach of contract against either Isaza or Kitchenery or Bhuva, and at a minimum has waived it right to assert any damages beyond those that would have accrued during the short period of time between when Isaza first used the software and when Dassault had the means of contacting him directly.

3. **Failure to mitigate damages.** For the same reasons alleged respecting plaintiff's waiver, that conduct operates as a limit on plaintiff's damages insofar as it failed to take action to protect itself form further alleged damages. It could have prevented the very damages it claims accrued by the lapse of time by taking the simple step of emailing Isaza, even before he came to perform work on behalf of Kitchenery as an independent contractor. Had that occurred, none of the alleged damages purportedly respecting Computer 2 would have occurred, and the alleged damages purportedly respecting Isaza's Computer 1 would have been minimal and allocable to him alone, in his individual, personal capacity. Dassault knowingly forwent that opportunity in order to wait for an opportunity to extract extra-

contractual monies from a business.

4. **No agency.** At all relevant times, defendant Isaza was never under the direct control of defendants Kitchenery or Bhuva. Isaza was an independent contractor who owned his own computer hardware and software.

5. **Fabre defendants.** If the alleged software is unlicensed, then (1) the individual working at the computer store in Columbia that installed the software on defendant Isaza's personal computer is at fault for making the copy and any circumvention or breach of contract. So too is (2) the eBay seller or some other person who installed the allegedly unlicensed software on the computer Isaza understands was acquired by Kitchenery. Consequently, the alleged damages suffered by plaintiff are the result of the conduct of third parties over whom defendant had no control, and therefore the liability of defendant, if any, should be reduced by the degree of fault by those third parties.

6. **De minimis copying.** Plaintiff's claims and damages are limited or outright barred because the proportion of the copyrighted work copied into computer volatile, temporary memory (RAM) is minimal, even assuming such copying is actionable, which defendant maintains it is not because such incidental and temporary existence of that copy is not "fixed." 17 U.S.C. § 101.

7. **Innocent, good faith use.** Plaintiff's claims and damages are barred, in

whole or in part, because defendant has not willfully infringed any intellectual property or other rights owned by plaintiff and because defendant acted in good faith and without any intention of injuring plaintiff. 17 U.S.C. § 504(c)(2). In fact, he relied in good faith on third party purveyor of computer services to install and provide legitimate software and on Kitchenery in its provision of a different computer with software loaded on it. Immediately upon receiving information from plaintiff asserting that the software was unlicensed, defendant ceased using it. Plaintiff admits that the asserted infringement ceased as to Computer 1 on the day or day after Kitchenery received the cease-and-desist letter from plaintiff's lawyers. So too with respect to Computer 2 after plaintiff asserted that device had unlicensed software. Additionally, the same conduct constitutes an innocent violation pursuant to 17 U.S.C. § 1203(c)(5).

8. **Preemption.** Plaintiff's claim sounding in contract are preempted by the Copyright Act. 17 U.S.C. § 301(a). The rights asserted by Dassault concern, at its core, alleged copying of a small portion of computer code into RAM, the sole basis on which plaintiff's legal theories depend. The software itself is within the subject matter of copyright under §§ 102 and 103, and preventing the copying of some of that software into RAM during use is the equivalent to a § 106 right. Crow v. Wainwright, 720 F.2d 1224, 1225-26 (11th Cir. 1983). The hook on which the software licensing regime depends

is on the mistaken notion that a small and fleeting copy of software code exists in RAM only which a computer system is powered on and is thus "fixed" and therefore a "copy" falling within the scope of § 106(1). That is a fundamental misunderstanding of the plain text of the Copyright Act. No contract for copyrighted software can exist without the accompanying substantive copyright *right* purportedly licensed by plaintiff. The conduct alleged as between the asserted copyright infringement and circumvention on the one hand (Copyright Act), and breach of contract on the other hand, is one and the same. The contract claims are preempted.

9. **License.** Plaintiff's copyright claims or damages are barred, in whole or in part, because defendant's use, if any, of any element from the work in which plaintiff alleges a copyright interest was a permissible use pursuant to license (whether contractually, impliedly, or equitably) granted by plaintiff, to defendants. On information and belief, the third party vendors of the software and hardware had legitimate licenses, which defendants acquired through their purchase of software services in Columbia and the hardware itself on eBay.

10. **Failure to state a claim.** Plaintiff's complaint fails to state a claim upon which relief can be granted for at least the reasons articulated in the defendant's answer, above: the allegations are vague and ambiguous. It also fails to state a claim for circumvention where it admits that the subject

computer was purchased by Kitchenery as-is and the eBay listing stated it already had operational software on it. Plaintiff also fails to allege the formation of a contract with Bhuva, fails to allege formation of a contract with Izaza, and fails to allege formation of contract with Kitchenery. Plaintiff also fails to allege actionable infringement by merely alleging use, assuming use is one of the rights enumerated under §106 (it is not). It also fails to state a claim as a result of its co-mingling claims and failing to maintain discrete theories of recovery permitted by law against discrete defendants. Additionally, there is no statutory action for "contributory" infringement under the Copyright Act, and courts are not at liberty to invent common law theories of recovery under a statutory-only regime created by congress. Cox Commc'ns v. Sony Music Entm't, 146 S. Ct. 959 (2026). Nor has plaintiff alleged a valid claim for vicarious liability as to Bhuva, who is not alleged to be the master of Isaza. If anything, such a theory lies only as against Kitchenery, but even then plaintiff fails to properly allege a theory of respondeat superior and which Kitchenery denies in any event. As to circumvention, the complaint makes plain that the monitoring features of plaintiff's software were fully functional.

11. **Failure of consideration.** To the extent the third party computer and software vendors did not have the lawful ability to install the software or sell the computer with the software, no contract formed as between plaintiff

and defendants because no consideration was received by Dassault. Indeed, that appears to be the clear allegation in its complaint: that the software was not paid for. Consequently, its contract theory fails as a matter of law for want of mutuality of obligation.

12. **Copyright statutory damages limited by actual damages**. To the extent plaintiff seeks to rely solely on statutory damages at the trial of this case, any such damages must be informed by evidence of actual damages suffered.

13. **First sale doctrine.** Pursuant to 17 U.S.C. § 109(a), plaintiff's claim is barred by the first sale doctrine when it sold its software to the eBay seller or the person who originally installed the software on the computer.

14. **Essential Step.** Pursuant to 17 U.S.C. §117(a)(1), as an owner of the software, defendants' copying of a small portion of the copyrighted software into RAM is an essential step for its use and, therefore, defendants have not infringed plaintiff's copyright nor circumvented any technological measure.

15. **Interoperability.** Pursuant to 17 U.S.C. § 1201(f), defendants' use of the software did not circumvent a technological measure because on information and belief, they lawfully obtained the software and therefore the use of the software required interoperability with other programs to exchange information with the alleged software.

16. **Set-off.** Plaintiff's damages are limited as a consequence of its policy of

providing pro rata refunds on unused portions of subscription revenue. Additionally, plaintiff provides an initial 60 day/100 hour free license. Any duration-based damages asserted by plaintiff must be reduced by and set off from that which it voluntarily does not charge for.

**17.** **Contract of adhesion**. The alleged contract is one of adhesion. It is procedurally unconscionable where plaintiff's terms are take-it-or-leave-it without any ability for a member of the consuming public to negotiate any terms other than price. The sum total of Dassault's provisions drives too hard a bargain for this a court of conscience to assist. In essence, plaintiff seeks to use a fluke of the type of work at issue—a purported "copy" of code being temporarily placed into RAM—as a means to turn non-infringing use of a work into actionable infringement, thus expanding the statutory rights explicitly provided for under § 106. Consequently, the contract is unenforceable.

18. **Election of remedy.** Plaintiff's damages are limited under its alternative theories of recovery for breach of contract or copyright. Plaintiff cannot obtain duplicative damages for the same alleged wrongdoing. So too with respect to its theories as among the defendants collectively. While plaintiff's pleading is fatally vague, to the extent it asserts theories of vicarious liability, there cannot be a duplicate of recovery as between the direct wrongdoer and the other party. Any such liability is simply joint.

19. **One satisfaction rule.** To the extent plaintiff recovers, whether by way of settlement or judgment, for the alleged misconduct from one defendant, then plaintiff is precluded from seeking damages from others for the same conduct. BUC Int'l Corp. v. Int'l Yacht Council Ltd., 517 F.3d 1271 (11th Cir. 2008).

________________________
Griffin C. Klema, Esq.
Fla. Bar No. 100279
Griffin@KlemaLaw.com
**Klema Law, P.L.**
PO Box 172381
Tampa, FL 33672
420 W. Kennedy Boulevard
Tampa, FL 33606
Telephone: 202-713-5292
*Counsel for Defendants*