**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**

**Case No. 8:26-cv-705-WFJ/AAS**

DASSAULT SYSTEMES SOLIDWORDS CORPORATION,
a Delaware corporation,

Plaintiff,

v.

KITCHENERY, INC.,
a Florida corporation,
AKSHAY BHUVA, and
LUIS ISAZA,

Defendants.

---

# DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS

Defendants Kitchenery, Inc., Akshay Bhuva, and Luis Isaza, by and through their attorney, Griffin Klema, Esq., and pursuant to Fed. R. Civ. P. 12(c) moves for judgment on the complaint of plaintiff Dassault Systemes Solidworks Corporation for failing to state a claim upon which relief could be granted, and for shotgun pleading.

They further request that the Court certify the question of secondary liability under the Copyright Act, pursuant to 28 U.S.C. § 1292(b), as argued in a separate motion, and also request oral argument on those motions.

# TABLE OF CONTENTS

Page

TABLE OF CONTENTS ii

TABLE OF CITATIONS iii

INTRODUCTION 1

FACTS & PROCEDURAL HISTORY 1

STANDARD FOR JUDGMENT ON THE PLEADINGS 2

ARGUMENT 3

**I. THE COMPLAINT FAILS TO STATE A CLAIM 3**

A. Dassault cannot state any claims for secondary liability 3

1. The plain language of the Copyright Act does not contemplate a general claim for secondary liability 3

2. Contributory infringement claims have been narrowed by Cox Communications and Dassault does not state a claim for contributory infringement 4

3. Vicarious copyright infringement is not a cognizable claim under the Copyright Act 5

*a. The Supreme Court has never held the copyright statutes permit vicarious liability 5*

*b. Supreme Court copyright decisions since the founding show that no claim for vicarious liability claim is cognizable under the Copyright Act 6*

*c. The Patent Act and its construction by the Supreme Court reinforce that no claim for vicarious liability exists in the Copyright Act 10*

*d. Secondary liability in copyright is an outgrowth of impermissible federal court common law lawmaking 11*

B. The complaint alleges facts that make Dassault's contract claims impossible 13

C. Dassault does not state a claim for § 1201(a)(1) circumvention against any defendants ........................................ 14

D. The Complaint fails to state any claims of direct infringement against Kitchenery or Bhuva .................................. 17

**II. DASSAULT'S CONTRACT CLAIMS ARE PREEMPTED UNDER 17 U.S.C. § 301(A) ........................................................ 17**

**III. THE COMPLAINT CONSTITUTES AN IMPERMISSIBLE SHOTGUN PLEADING .................................. 19**

**IV. AMENDMENT OF THE COMPLAINT WOULD BE FUTILE ...................................................................................... 22**

CONCLUSION ........................................................................................ 23

Local Rule 3.01(g) Certificate ................................................................ 24

## TABLE OF CITATIONS

Page

### Cases

321 Studios v. Metro Goldwyn Mayer Studios, Inc.,
307 F.Supp.2d 1085 (N.D. Cal. 2004) .................................................... 15

Andrx Pharms., Inc. v. Elan Corp.,
421 F.3d 1227 (11th Cir. 2005)............................................................... 2

Ashcroft v. Iqbal,
556 U.S. 662 (2009) .................................................................................. 3

Bell Atl. Corp. v. Twombly,
550 U.S. 544 (2007) .................................................................................. 2

Buck v. Jewell-LaSalle Realty Co.,
283 U.S. 191 (1931) .................................................................................. 8

Cesnik v. Edgewood Baptist Church,
88 F.3d 902 (11th Cir. 1996)................................................................. 20

Chamberlain Grp., Inc. v. Skylink Techs., Inc.,
381 F.3d 1178 (Fed. Cir. 2004) ........................................................... 14

Cockrell v. Sparks,
510 F.3d 1307 (11th Cir. 2007) ........................................................... 23

Cox Commc'ns, Inc. v. Sony Music Entm't,
146 S.Ct. 959 (2026) ........................................................... passim

Crow v. Wainwright,
720 F.2d 1224 (11th Cir. 1983) ........................................................... 17, 18

Dassault Systemes SolidWorks Corp. v. NewtonGen, Inc.,
no. 25-cv-2891 (M.D. Fla. Nov. 7, 2025) ........................................................... 22

Fogerty v. Fantasy,
510 U.S. 517 (1994) ........................................................... 12

Fortnightly Corp. v. United Artists Tele., Inc.,
392 U.S. 390 (1968) ........................................................... 8, 9

Globe Newspaper Co. v. Walker,
210 U.S. 356 (1908) ........................................................... 7

Graham v. John Deere Co.,
383 U.S. 1 (1966) ........................................................... 10

Guarino v. Wyeth LLC,
823 F. Supp. 2d 1289 (M.D. Fla. 2011) ........................................................... 2

Hawthorne v. Mac Adjustment, Inc.,
140 F.3d 1367 (11th Cir. 1998) ........................................................... 2

Hills & Co. v. Hoover,
220 U.S. 329 (1911) ........................................................... 7

I.M.S. Inquiry Mgmt. Sys. v. Berkshire Info. Sys.,
307 F.Supp.2d 521 (S.D.N.Y. 2004) ........................................................... 14, 15

Latimer v. Roaring Toyz, Inc.,
601 F.3d 1224 (11th Cir. 2010) ........................................................... 18

Limelight Networks, Inc. v. Akami Techs., Inc.,
572 U.S. 915 (2014) .......... 11

Lipscher v. LRP Publ'ns, Inc.,
266 F.3d 1305 (11th Cir. 2001) .......... 18

Loranger Constr. Corp. v. E.F. Hauserman Co.,
376 Mass. 757 (1978) .......... 13

Magluta v. Samples,
256 F.3d 1282 (11th Cir. 2001) .......... 21

MGE UPS Sys., Inc. v. GE Consumer & Indus., Inc.,
622 F.3d 361 (5th Cir. 2010) .......... 14, 15

Milwaukee v. Illinois,
451 U.S. 304 (1981) .......... 12

Nurse v. Sheraton Atlanta Hotel,
618 F. App'x 987 (11th Cir. 2015) .......... 22

Paige v. Banks,
80 U.S. 608 (1871) .......... 7

Perfect 10, Inc. v. Giganews, Inc.,
847 F.3d 657 (9th Cir. 2017) .......... 16

Samara v. Taylor,
38 F.4th 141 (11th. Cir. 2022) .......... 2

Sony Corp. of Am. v. Universal City Studios, Inc.,
464 U.S. 417 (1984) .......... 4, 8

Stevens v. Gladding,
58 U.S. 447 (1855) .......... 7, 10, 12

Thompson v. Hubbard,
131 U.S. 123 (1889) .......... 7

Universal City Studios, Inc. v. Corley,
273 F.3d 429 (2d Cir. 2001) .......... 15

Vibe Micro, Inc. v. Shabanets,
878 F.3d 1291 (11th Cir. 2018) .......... 22

Wagner v. Daewoo Heavy Indus. Am. Corp.,
314 F.3d 541 (11th Cir. 2002) .......... 22

Weiland v. Palm Beach Cnty. Sheriff's Office,
792 F.3d 1313 (11th Cir. 2015) .......... 19

## Statutes

17 U.S.C. § 111(b) .......... 9

17 U.S.C. § 1201 .......... 15

17 U.S.C. § 1201(a) .......... 14

17 U.S.C. § 1201(a)(3)(A) .......... 14

17 U.S.C. § 301(a) .......... 17

17 U.S.C. § 501(a) .......... 3, 10

17 U.S.C. § 501(c)-(f) .......... 9

35 U.S.C. § 271(b) .......... 10

35 U.S.C. § 271(c) .......... 10

## Rules

Fed. R. Civ. P. 12(c) .......... 2

## Other Authorities

H.R.Rep. No. 94-1476, 94th Cong., 2d Sess. 130 (1976) .......... 17

MICHAEL W. CARROLL, DISRUPTIVE TECH. AND COMMON LAW LAWMAKING: A BRIEF ANALYSIS OF A&M RECORDS INC. V. NAPSTER, INC., 9 JEFFREY S. MOORAD SPORTS L.J. 5 (2002) .................. 12

Restatement (Second) of Contracts, § 71 .................................................. 13

U.S. Const. art. I, § 8, cl. 8 ........................................................................ 10

## INTRODUCTION

This suit continues because plaintiff continues to grossly overvalue its case, giving the defendants little choice but to oppose that overreach. This motion raises important questions about the scope of secondary liability under the Copyright Act, based chiefly on the Supreme Court's recent decision in Cox Commc'ns, Inc. v. Sony Music Entm't, 146 S.Ct. 959 (2026). Pursuant to that decision, Dassault cannot state claims of secondary liability against any defendants. And because of the recency of that decision and the conflict between it and lower court decisions recognizing theories of vicarious liability, defendants seek immediate interlocutory appeal of the Court's order on that issue by separate motion.

Apart from Dassault's infringement claims, other of its claims are also subject to judgment as a matter of law, including its circumvention theory, where it does not and cannot plead the requisite conduct, as well as its contract claims which likewise are not cognizable on its own allegations. They are also preempted in any event by the Copyright Act. Finally, the complaint remains a shotgun pleading. No leave to amend should be granted with respect to futile claims.

## FACTS & PROCEDURAL HISTORY

Plaintiff Dassault brought a multi-count complaint against three defendants, spanning 28 pages and 146 paragraphs of allegations. [DE 1]. Defendants

were originally represented by predecessor counsel, and upon her withdrawal and new counsel appearing the Court granted the defendants' motion for leave to file amended answers and affirmative defenses. [DE 26]. The defendants then filed their amended answers and affirmative defenses, which includes defenses related to Dassault's failure to state a claim, as well as preemption. [DE 28 and 29]. They now move for judgment on the pleadings under Rule 12(c).

**STANDARD FOR JUDGMENT ON THE PLEADINGS**

"After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). "Judgment on the pleadings is proper when no issues of material fact exist, and the moving party is entitled to judgment as a matter of law based on the substance of the pleadings." Andrx Pharms., Inc. v. Elan Corp., 421 F.3d 1227, 1232 (11th Cir. 2005). "A motion for judgment on the pleadings is governed by the same standard as a Rule 12(b)(6) motion to dismiss." Guarino v. Wyeth LLC, 823 F. Supp. 2d 1289, 1291 (M.D. Fla. 2011) (citing Hawthorne v. Mac Adjustment, Inc., 140 F.3d 1367, 1370 (11th Cir. 1998)). "[T]he factual allegations 'must be enough to raise a right to relief above the speculative level'—with 'enough facts to state a claim to relief that is plausible on its face.' Under this standard, bare legal conclusions 'are not entitled to the assumption of truth' and are insufficient, standing alone, to state a claim." Samara v. Taylor, 38 F.4th 141, 152 (11th. Cir. 2022) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007) and

Ashcroft v. Iqbal, 556 U.S. 662 (2009)).

## ARGUMENT

### I. THE COMPLAINT FAILS TO STATE A CLAIM

#### A. Dassault cannot state any claims for secondary liability

##### 1. The plain language of the Copyright Act does not contemplate a general claim for secondary liability

The source of a copyright owner's cause of action for infringement is found in Section 501 of the Copyright Act. It provides, in relevant part:

> Anyone who violates any of the exclusive rights of the copyright owner as provided by sections 106 through 122 or of the author as provided in section 106A(a), or who imports copies or phonorecords into the United States in violation of section 602, is an infringer of the copyright or right of the author, as the case may be.

17 U.S.C. § 501(a). The statute does not speak in terms of liability extending to non-infringers that might "allow" the infringement by another or even those that might "profit from" another's infringement. Nor does it speak in terms of respondeat superior. The Supreme Court recognized as much in its recent decision, stating "[t]he Copyright Act does not expressly render anyone liable for infringement committed by another." Cox Commc'ns, Inc. v. Sony Music Entm't, 146 S.Ct. 959, 967 (2026). And it clarified that statement by describing the source of liability lying with the legislative branch, not the courts: "when Congress intends to impose secondary liability, it does so expressly." Id.

Despite the Copyright Act's text (both under the 1909 Act and the 1976

Act), courts have improperly expanded liability beyond what the statute provides, and have failed to heed repeated Supreme Court decisions making clear that claims for infringement must be found in the statute itself. Courts are not permitted to create federal common law.

**2. Contributory infringement claims have been narrowed by Cox Communications and Dassault does not state a claim for contributory infringement**

Following Cox Communications, only two cases provide the entire potential scope of a claim for contributory infringement. The Supreme Court explicitly cabined the entire field of contributory infringement to its two prior decisions, to the exclusion of any other circuit court opinions. Cox Communications, 146 S. Ct. at 967 (identifying Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd., 545 U.S. 913, 930 (2005) and Sony Corp. of Am. v. Universal City Studios, Inc., 464 U.S. 417, 439 (1984)). From those two cases it synthesized a narrow rule for what constitutes contributory infringement, which requires a showing of "affirmative intent," which in turn can be shown by only "one of two things." Id. at 964. Either "a party affirmatively 'induc[ed]' the infringement" or the defendant "sold a service tailored to infringement." Id. Intent is therefore a "required" showing under a theory of contributory liability. Id. at 967. That intent necessarily requires explicit knowledge of infringement. Cf. id. And "mere knowledge" of possible infringement "is insufficient." Id. at 968. Neither supervision and control nor profiting from the other's infringement forms the

basis of such secondary liability.

Here, Dassault's complaint does not state a claim for contributory infringement by any defendant (assuming that is what Dassault attempts to plead). Nowhere does it allege affirmative intent required by Cox Communications, nor does the complaint allege any defendant induced any infringement by affirmative intent nor sold a product affirmatively intended to be tailored to infringement. Thus the complaint fails to state any claims of contributory infringement. Nor could Dassault state a claim for contributory infringement post-Cox Communications. Any alternative theories of vicarious liability are also beyond the scope of the statute's reach.

**3. Vicarious copyright infringement is not a cognizable claim under the Copyright Act**

**a. The Supreme Court has never held the copyright statutes permit vicarious liability**

The Supreme Court has never expressly held that the copyright laws permit claims for vicarious liability. And in light of Cox Communications, supported by nearly 200 years of decisions under multiple different versions of the copyright laws, show it would not.

While Cox Communications did not directly confront the question of vicarious liability, the decision implicitly reveals such a theory of secondary liability is not cognizable under the Copyright Act, because the Act "does not expressly render anyone liable for infringement committed by another." Cox

Communications, 146 S.Ct. at 967. That statement about what the statute says was not a passing observation, but the direct rationale for why the Court reoriented the lower courts to the source of a plaintiff's ability to hold another liable for a statutory violation—i.e. the Copyright Act itself. In no uncertain terms the Court limited secondary theories under the Copyright Act, stating that it was "loath to expand [secondary] liability beyond" its two recent precedents. Id. That prompted Justice Sotomayor to concur in the judgment only, effectively dissenting that the majority all but gutted any secondary liability theories bottomed on common law principles. She observed that the majority's decision "curtails secondary liability" and imposes an "inflexible limit." Id. at 969-76 (further arguing that the dicta in Grokster and Sony suggested broad common law theories are permissible under the statute). Thus, the Court's rationale in narrowing contributory liability applies equally to vicarious liability, namely that courts cannot create such liability by federal common law lawmaking where none exists in the statute.

Its two rationales—no statutory language and reluctance to expand non-statutory liability—can be best understood in view of the Supreme Court's long history of construing the copyright laws since the founding.

**b. Supreme Court copyright decisions since the founding show that no claim for vicarious liability claim is cognizable under the Copyright Act**

Copyright stands as a pure statutory creature; it derives directly and

originally from the Constitution as a right emanating from the state itself and courts are not permitted to create general federal common law.

"There being no common law of copyright in this country, whatever rights are possessed by the proprietor of the copyright must be derived from some grant thereof, in some act of congress." Stevens v. Gladding, 58 U.S. 447, 454 (1855); see also Globe Newspaper Co. v. Walker, 210 U.S. 356, 362 (1908) (the copyright statutes "did not provide for the continuation of the common-law right, but, under constitutional authority, created a new right"); Paige v. Banks, 80 U.S. 608, 611 (1871) (copyright is "a creature of statute" and therefore a "man has no more 'copyright' than what the statutes gives him").

Because that right derives from the statute alone, any causes of action are similarly limited to those provided by the statute. A "right of action [for infringement] as well as the copyright itself, is wholly statutory, and the means of securing **any right of action in [a plaintiff] are only those prescribed by Congress**." Thompson v. Hubbard, 131 U.S. 123, 151 (1889) (emphasis supplied); accord Hills & Co. v. Hoover, 220 U.S. 329, 337 (1911) ("The copyright statutes of the United States afford all the relief to which a party is entitled, and **no action outside of those provided therein will lie**.") (emphasis supplied) (citing Globe Newspaper, 210 U.S. 356). Therefore, without an express Congressional grant of a cause of action for secondary liability in the Copyright Act, none can be read-in. Id. Lower courts that have done so have erred.

The Supreme Court has also recognized that changes in technology do not give the courts license to reinterpret the text pursuant to judicial policy or common law lawmaking. "Congress ... fashion[s] the new rules [of copyright law] that new technology ma[kes] necessary." Sony Corp. of Am. v. Universal City Studios, Inc., 464 U.S. 417, 430-31 (1984).

Consistent with that limitation on judicial policymaking, it distanced itself from a prior "questionable" decision it later recognized was antithetical to the baseline rules it had long-established, and which subsequently expanded liability under the Copyright Act. Fifty years before Sony, the Court held a hotel liable for copyright infringement of sound recordings when it played the radio in its lobby and provided in-room radio access to its guests. Buck v. Jewell-LaSalle Realty Co., 283 U.S. 191 (1931). But in the years following Buck, as courts greatly expanded the reach of copyright claims against all manner of businesses for retransmission of over-the-air broadcast signals, the Supreme Court reversed course.

In Fortnightly Corp. v. United Artists Tele., Inc., 392 U.S. 390 (1968), it effectively overruled Buck. It held that retransmission of radio signals was not an infringement, stated that Buck was "a questionable" decision, id. at 401 n.30, and then "limited [Buck] to its own facts," id. at 396 n.18. Not unlike Justice Sotomayor's concurrence in Cox Communications arguing for *stare decisis*, Justice Fortas dissented in Fortnightly, and asserted "the Court today

abandons the teachings of precedent, including a precedent of this Court." Id. at 404-05. He further observed that the decision was a "matter[] of statutory construction" respecting the meaning of "perform" under the 1909 Copyright Act, and that it was not the Court's "general practice to reverse [itself]." Id. at 405. Though the majority did not expressly ground its rationale in the text, it recognized the unwarranted judge-made law that would result from a contrary rule: "many people ... might find themselves liable for copyright infringement [including] the apartment house owner ... the shopkeeper who sells or rents television sets, and, indeed, every television set manufacturer." Id. at 397.

In light of Fortnightly, and with growing concerns about both liability from businesses and protection of copyright from rights owners, Congress significantly overhauled the copyright laws, passing the Copyright Act of 1976. It expressly included the particulars of the technological issues in Buck and Fortnightly, detailing precisely when retransmission of broadcast signals constitutes infringement, and expressly creating a new cause of action for retransmission, 17 U.S.C. § 111(b) (secondary transmission "is actionable as an act of infringement"), as well as exceptions to that new right, 17 U.S.C. § 501(c)-(f). Notably absent from the new copyright act was any general claim for secondary liability. Instead, a cause of action for infringement remained limited to direct infringers, but with new claims cognizable for secondary transmissions as

violative of the performance right under § 106. See generally id.[1]

**c. The Patent Act and its construction by the Supreme Court reinforce that no claim for vicarious liability exists in the Copyright Act**

That there is no general claim for secondary liability (excepting what the statute provides and what Cox Communications has allowed to remain as judge-made law) is reinforced when one considers the related field of patent law, also deriving from the constitution's useful arts clause. U.S. Const. art. I, § 8, cl. 8.

At the founding, letters patent were not part of the common law, but were grants directly from the sovereign. See Graham v. John Deere Co., 383 U.S. 1, 5-9 (1966) (discussing patent law during the founding era). In contrast to the Copyright Act, the Patent Act *does* include secondary liability. 35 U.S.C. § 271(c) (identifying conduct that makes one "liable as a contributory infringer"); see also 35 U.S.C. § 271(b) (inducement infringement). The Court, construing the Patent Act, observed that "when Congress wishes to impose

---

[1] Legislative history suggesting Congress did not include a broad right of action for vicarious liability writ large (on account of then-existing lower court rulings) is simply legislative error in assuming those inferior court decisions were proper in the first place. In contrast to what the Supreme Court has stated repeatedly, courts are not at liberty to create federal common law. Stevens, 58 U.S. at 454 (there is "no common law of copyright in this country" any rights and causes of action are only those "derived" by a "grant" through an "act of congress"). The existence of a few improper 1909 Act court decisions does not allow those same inferior courts now—contrary to binding decisions of the Supreme Court—to read-in an atextual cause of action under the Copyright Act of 1976 which they impermissibly created in the first place. Such reasoning is wholly circular reasoning in violation of the separation of powers articulated through myriad Supreme Court decisions.

liability for induc[ment] that does not itself constitute direct infringement, it knows precisely how to do so" and cautioned that "courts should not create liability for inducement of noninfringing conduct where Congress has elected not to extend that concept." Limelight Networks, Inc. v. Akami Techs., Inc., 572 U.S. 915, 922-23 (2014).

That two fields of intellectual property, both growing out of the same constitutional provision and created by Congress through positive law, where one includes secondary liability and the other does not, illustrates that the Copyright Act does not permit secondary liability, including vicarious liability. The Supreme Court has approached secondary liability similarly for both, not reading-in liability through a common law process where none exists in the statutory text. Congress well-knew how to write a statute that provided for secondary liability, did so in the Patent Act, and refrained from doing so in the Copyright Act.

**d. Secondary liability in copyright is an outgrowth of impermissible federal court common law law-making**

A review of the case law suggesting that vicarious liability for copyright infringement is permissible shows that it was not grounded on the language of the statute. Commentators recognize the origin of those cases is a federal "common law process" and "judicial doctrine," MICHAEL W. CARROLL, DISRUPTIVE TECH. AND COMMON LAW LAWMAKING: A BRIEF ANALYSIS OF A&M RECORDS

INC. V. NAPSTER, INC., 9 JEFFREY S. MOORAD SPORTS L.J. 5, 23 (2002), but which the Supreme Court has repeatedly admonished as impermissible, e.g., Milwaukee v. Illinois, 451 U.S. 304, 312-14 (1981) (Federal courts "are not general common-law courts and do not possess a general power to develop and apply their own rules of decision"), and which is especially true in copyright, Stevens, 58 U.S. at 454 (there is "no common law of copyright in this country" any rights are only those "derived" by a "grant" through an "act of congress"). Consequently, decisions recognizing vicarious liability are merely the "culmination of a long line of bootstrapping from nothing to something." See Fogerty v. Fantasy, 510 U.S. 517, 532 n.18 (1994).[2] Cox Communications all but puts an end to that bootstrapping of another unwarranted expansion of plaintiff-favoring judicial policy not found in the text of the Copyright Act. Cox Communications expressly "curtails secondary liability." 146 S. Ct. at 976 (Sotomayor, J., concurring in the judgment).

In view of the repeated admonitions of the Supreme Court since the founding, this Court should not recognize any theory of secondary liability beyond what Cox Communications has allowed, and find that Cox Communications changed the landscape of what theories are cognizable under the

[2] Fogerty itself shows that the Court will, where appropriate, overrule a widespread and longstanding body of law despite a consensus of the district and circuit courts. Like here, that atextual body of law favoring plaintiffs had developed over time across multiple jurisdictions, but which District Judge Warriner had the courage to recognize was improper.

Copyright Act. Under that standard, Dassault's complaint fails to state a claim for secondary liability by any defendant.[3]

### B. The complaint alleges facts that make Dassault's contract claims impossible

Dassault's complaint does not state a claim for breach of contract because it utterly fails to allege the contract's formation. Merely clicking on something does not a contract make (assuming the defendants did in fact do so, which they dispute). It is hornbook law that a contract requires consideration to be formed. Loranger Constr. Corp. v. E.F. Hauserman Co., 376 Mass. 757 (1978); see also Restatement (Second) of Contracts, § 71 (requirement of exchange). The complaint alleges the defendants did not pay for a license to the SolidWorks software. Compl. ¶ 75. That is the core of this dispute. But as to its contract theory, Dassault alleges nothing it received from any of the defendants that would constitute consideration sufficient to form an agreement.

A separate fatal flaw also dooms Dassault's contract theory. Even if Dassault claims (wrongly) that it received some promise or forbearance from the defendants, the defendants certainly haven't received anything from Dassault. It claims defendants were not authorized to use its software at all. See generally Compl. Dassault therefore does not, and cannot, plead a claim sounding in

[3] Even then, a theory of secondary liability based on vicarious liability would necessarily need to be premised on agency law and respondeat superior in particular. Mere "ability to supervise and control" is not the equivalent of nor create an agency relationship necessary for respondeat superior (vicarious) liability to attach.

contract.

### C. Dassault does not state a claim for § 1201(a)(1) circumvention against any defendants

A claim for copyright circumvention under 17 U.S.C. § 1201(a), "does not apply to the use of copyrighted works *after* the technological measure has been circumvented." MGE UPS Sys., Inc. v. GE Consumer & Indus., Inc., 622 F.3d 361, 366 (5th Cir. 2010). That is because the DMCA impliedly includes intent, or at a minimum a volitional conduct requirement, in its definition of circumvention: "to avoid, bypass, remove, deactivate, or impair." 17 U.S.C. § 1201(a)(3)(A); see also Chamberlain Grp., Inc. v. Skylink Techs., Inc., 381 F.3d 1178, 1203 (Fed. Cir. 2004) (observing that the district court analyzed the plaintiff's "allegations in precisely the appropriate matter—a narrow focus on Skylin's behavior [and] intent"). The statute's words all connote some knowing action with respect to the defined phrase that follows that list: "a technological measure." Id. One cannot circumvent that of which they are unaware exists, or takes no steps in furtherance to "avoid, bypass, remove, deactivate, or impair."

In light of that statutory text, courts confronted with claims of circumvention have focused on the accused's conduct, not simply the state of affairs at a point in time. For example, in I.M.S. Inquiry Mgmt. Sys. v. Berkshire Info. Sys., 307 F.Supp.2d 521 (S.D.N.Y. 2004), the plaintiff accused the defendant of circumvention by using a key that the plaintiff had not authorized be used by

that defendant. The court held, however, "the DMCA does not accrue upon unauthorized and injurious access *alone*" but instead the statute "targets the *circumvention*" itself. Id. at 532-33 (emphasis in original) (quoting Universal City Studios, Inc. v. Corley, 273 F.3d 429 (2d Cir. 2001)). Other courts have found likewise. MGE UPS Sys., 622 F.3d at 366 (the question "is not whether the technological measures that effectively controlled access to MGE's software were circumvented at some point, but whether the actions of [the accused] amounted to circumvention"); 321 Studios v. Metro Goldwyn Mayer Studios, Inc., 307 F.Supp.2d 1085, 1097 (N.D. Cal. 2004) ("a simple reading of [§ 1201(b)(1)] makes it clear that its prohibition applies to the manufacturing, trafficking in and making of devices that would circumvent encryption technology, not to the users of such technology").

Like an act of direct infringement, circumvention requires volitional conduct. Cf. id.; accord MGE UPS Sys., 622 F.3d at 366 ("[w]e [] do not construe 'bypass' or 'avoid' to encompass use of a copyrighted work subsequent to a circumvention" because doing so "would extend the DMCA beyond its intended purposes to reach extensive conduct already well-regulated by existing copyright laws"). Illustrating the requirement of actual conduct is the statute's lack of text making mere possession of circumvention technology unlawful. See 17 U.S.C. § 1201. That conclusion also accords with cases applying volition to direct infringement, e.g., Perfect 10, Inc. v. Giganews, Inc., 847 F.3d 657, 669-70

(9th Cir. 2017) (automatic copying, storing, or transmission of copyrighted materials is insufficient to allege volitional conduct for purposes of direct infringement), which does not make illegal mere possession of an unlawful duplicate or perception of an unlicensed performance by the public. It is the person that engaged in the underlying act (copying, distributing, displaying, circumventing, trafficking, etc.) that is the violator, and theirs the conduct proscribed.

Here, the complaint affirmatively alleges (and Dassault knows) that the second computer was "purchased" and which was already "loaded with" software when it was bought. Compl. ¶¶ 55-58. The defendants were unaware of any unlicensed software in the course of purchasing that machine and fully believed in good faith that the machine had licensed software. The complaint further alleges that plaintiff's software has "a requirement during installation" that a license key is required to "unlock" it, id. at ¶ 115, and that security feature was allegedly "bypass[ed], deactivate[d], or otherwise impair[ed]" by something Dassault calls "SolidSquad (SSQ) crack signature," id. at ¶ 117-118. But Dassault does not and cannot plausibly allege any defendant engaged in any volitional act respecting the alleged crack software because it specifically alleged the subject computer already came with operational software on it. Defendants didn't circumvent anything, and the complaint's allegation of preexisting operational software doom Dassault's circumvention claim.

Because Dassault's allegations show that no circumvention by any

defendant occurred, it has failed to (and cannot) state a claim for which relief can be granted, and the claims under 17 U.S.C. § 1201 must be dismissed with prejudice.

### D. The Complaint fails to state any claims of direct infringement against Kitchenery or Bhuva

Dassault's complaint implicates two computers. But as to both, it alleges only Luis Isaza "used" those computers. Compl. ¶¶ 39 and 46. Therefore, the complaint fails to state a claim against either Kitchenery or Bhuva on a theory of direct copyright infringement.

## II. DASSAULT'S CONTRACT CLAIMS ARE PREEMPTED UNDER 17 U.S.C. § 301(A)

The Copyright Act provides the exclusive remedy for the type of harm alleged by Dassault. Claims sounding in copyright infringement are explicitly preempted by the Act. 17 U.S.C. § 301(a). "The intention of section 301 is to preempt and abolish any rights under the common law or statutes of a state that are equivalent to copyright and that extend to works coming within the scope of the federal copyright law." Crow v. Wainwright, 720 F.2d 1224, 1225-26 (11th Cir. 1983) (quoting H.R.Rep. No. 94-1476, 94th Cong., 2d Sess. 130 (1976)). The inquiry is not one of "conflict" but rather whether the asserted rights are "equivalent to" that of copyright. Id. The test for preemption under the Copyright Act is whether the rights at issue "fall within the subject matter of copyright" and whether those rights are "equivalent to" those under § 106.

Id. at 1225-26.

There is no question here that Dassault's theories all rely entirely on a theory of copyright. Compl. ¶¶ 11-60 (alleging ownership of copyright in the Solidworks software and infringement). It simply alleges that defendants installed the software "without paying the license fee." Compl. ¶ 130. That allegation is identical to a claim of copyright infringement in which a defendant is alleged to have exceeded the scope of its copyright license. E.g., Latimer v. Roaring Toyz, Inc., 601 F.3d 1224 (11th Cir. 2010). Thus its alternative theory of breach of an end-user license agreement (which the defendants never clicked on or agreed to in any event) is preempted. That is because the entire scope of alleged misconduct is the Solidworks software and the defendants' copying of that software. Compl. ¶¶ 126-139.

Its alternative theory of "running the SolidSquad (SSQ) crack" is also simply the equivalent of its theory of circumvention under the copyright act. Compl. ¶¶140-143. There is no allegation of reverse engineering, or any right that would be bottomed solely on a contract theory.

Dassault does not advance any theory that might stand on its own apart from copyright. That the relief it seeks is identical to that under its copyright theory reveals the inescapable conclusion that its contract theory is simply a copyright claim papered by contract, and therefore preempted. Lipscher v. LRP Publ'ns, Inc., 266 F.3d 1305, 1310-12 (11th Cir. 2001).

## III. THE COMPLAINT CONSTITUTES AN IMPERMISSIBLE SHOTGUN PLEADING

As articulated in the defendants' motion to strike the complaint, [DE 24], Dassault's pleading is impermissible as a shotgun pleading.

Of the four types of shotgun pleadings set forth in Weiland v. Palm Beach Cnty. Sheriff's Office, 792 F.3d 1313, 1323 (11th Cir. 2015), Dassault has managed to include a trifecta: being vague in its allegations among the multiple defendants, failing to separate counts (a "mortal sin" of pleading in the Eleventh Circuit), and asserting multiple claims against multiple defendants without specifying which defendants are responsible for which predicate acts or omissions, or which defendants the claims are brought against. Other problems include two paragraph fives, and at least three verbatim duplicate allegations. the complaint names three defendants and asserts three counts across 146 paragraphs (multiple of which are verbatim duplicates), each count further comprising multiple claims and failing to delineate which defendant allegedly did what, lumping all defendants together for purposes of each count. The complaint also includes the "mortal sin" of subsequent counts swallowing whole its predecessors. One of those counts includes three different and factually-distinct theories of copyright infringement (Count I: direct, vicarious, and contributory). [DE 1 at 17-20]. That was just one of the issues that characterized the shotgun complaint in Cesnik, prompting the court to lament that the

defendants did not force the district court to address the issue, "[n]or did the court require" repleading on its own. Cesnik v. Edgewood Baptist Church, 88 F.3d 902, 905 (11th Cir. 1996) (the pleading "was framed in complete disregard of the principle that separate, discrete causes of action should be plead [sic] in separate counts" where one count included "nine discrete theories of recovery" leading the court to "instruct the district court, before proceeding further in this case, to require the appellants to replead counts two and three of their complaint").

Most glaringly, the pleading repeatedly uses the phrase "at least one of" in ambiguous reference to either defendant Isaza, or unnamed "employees of Kitchenery, and/or persons under the control of Kitchenery and/or Bhuva." [DE 1 at ¶¶ 61, 67-69, 72, 79-80, 103-107, 117-119, 127, 130, 133-139, 141, and 143] (28 times total). To make matters worse, certain other paragraphs then refer disjunctively *and* conjunctively to "Kitchenery and/or Bhuva" id. at ¶ 108, but then later only conjunctively, id. at ¶ 109 (Kitchenery and Bhuva"). Paragraph 67 is a prime example of the impossible task faced by defendants in responding, and this Court will face later at summary judgment or trial if not corrected: "upon information and belief, the Computers have been used by at least one of Isaza, employees of Kitchenery, and/or persons under the control of Kitchenery

and/or Bhuva."[4]

If that wasn't enough, the penultimate paragraphs of each count then recite all three defendants as having engaged in *all* the alleged misbehavior. Id. at ¶ 112 (Count I copyright infringement); id. at ¶¶ 123 (Count II DMCA violation); id. at ¶ 129, 132, and 144 (Count III breach of contract). Further still, some paragraphs aren't even proper English. E.g., id. at ¶ 60 (lacking a subject: "Unauthorized and unlicensed copies of the SOLIDWORKS software on Computer 2 to do work for Kitchenery, Inc.").

Dassault's pleading must be dismissed because its allegations "mak[e] no distinction among the [three] defendants charged." Magluta v. Samples, 256 F.3d 1282, 1284 (11th Cir. 2001). And "[e]ach count incorporates by reference the allegations made ... [in] the allegations of [the] count or counts that precede it." Id.[5] Consequently, it "is a quintessential 'shotgun' pleading" in multiple respects, not just the reincorporation issue. Id. Dassault's "pleading completely disregards Rule 10(b)'s requirement that discrete claims should be pled in separate counts" and it "is the type of complaint that [the Eleventh Circuit ha[s] criticized time and again." Id. Thus:

> When a litigant files a shotgun pleading, is represented by counsel, and fails to request leave to amend,

[4] The possible permutations of who did what here are many. Computer 1 was used by Isaza. Computer 1 was used by Bhuva. Computer 1 was used by Isaza and Bhuva. Or maybe it was Computer 2. Computer 1 was used by Doe employee 1 of Kitchenery. Computer 1 was used by Doe person 2 under the control of Kitchenery. And so on.

[5] See Compl. ¶¶ 100, 114, and 125.

> a district court must sua sponte give him one chance to replead before dismissing his case with prejudice on non-merits shotgun pleading grounds.

Vibe Micro v. Shabanets, 878 F.3d 1291, 1296 (11th Cir. 2018) . After that one "opportunity to replead comes and goes, Daewoo's rule operates to allow the district court to dismiss with prejudice if the party has still neither filed a complaint pleading nor asked for leave to amend." Id. (citing Wagner v. Daewoo Heavy Indus. Am. Corp., 314 F.3d 541 (11th Cir. 2002) (en banc)).

This motion not constitute it was the third notice to Dassault of its problematic pleading. As previously articulated in defendants' motion to strike, Dassault's near-identical complaint its suit against another Florida company was sua sponte stricken as a shotgun pleading. See Order, [DE 14], Dassault Systemes SolidWorks Corp. v. NewtonGen, Inc., no. 25-cv-2891 (M.D. Fla. Nov. 7, 2025).[6] Judge Honeywell issued a three-page order with the relevant law. Despite that preexisting knowledge of the law in this circuit, Dassault nevertheless filed its complaint in this case with the exact same problems. Therefore, Dassault has already had its one opportunity to replead, and its complaint should be dismissed with prejudice. Vibe Micro, 878 F.3d at 1295; Nurse v. Sheraton Atlanta Hotel, 618 F. App'x 987, 991 (11th Cir. 2015).

## IV. AMENDMENT OF THE COMPLAINT WOULD BE FUTILE

[6] Available at https://storage.courtlistener.com/recap/gov.uscourts.flmd.449102/gov.uscourts.flmd.449102.14.0.pdf

As the foregoing arguments show, all based on pure legal issues, Dassault simply cannot allege claims of secondary liability or alternatively under a theory of contract. Any pleading attempting to do so would be futile. So too with respect to any claims of direct infringement, at least with respect to Bhuva or Kitchenery.

"Leave to amend a complaint is futile when the complaint as amended would still be properly dismissed or be immediately subject to summary judgment for the defendant." Cockrell v. Sparks, 510 F.3d 1307, 1310 (11th Cir. 2007). Here, Dassault cannot plead claims sounding in contract, and cannot plead claims sounding in secondary liability for infringement. Any amendment that would include such claims would be futile.

**CONCLUSION**

Dassault's complaint is riddled with problems, including being an improper shotgun pleading. But more fundamentally, it fails to state claims against the defendants. It must be dismissed. Dassault cannot plausibly state claims, and dismissal should be with prejudice without leave to amend.

**WHEREFORE**, defendants Kitchenery, Inc., Akshay Bhuva, and Luis Isaza request the Court

a) grant this motion for judgment on the pleadings;

b) find that no secondary liability theories lie against any defendants;

c) find that the complaint does not state a claim of direct

infringement against Kitchenery, Inc. or Akshay Bhuva;

d) find plaintiff's contract claims are preempted by the Copyright Act;

e) find that plaintiff's complaint constitutes an impermissible shotgun pleading under three different kinds identified in Wagner;

f) find that amendment of plaintiff's complaint would be futile;

g) dismiss plaintiff's complaint with prejudice;

h) enter judgment for each defendant;

i) grant such further relief as the Court deems just and proper.

## LOCAL RULE 3.01(G) CERTIFICATE

Counsel for the movant certifies that he made reasonable efforts to confer with all parties or non-parties who may be affected by the relief sought in this motion on October 12, 2026, by email requesting availability of plaintiff's counsel to confer by telephone, but the conferral has not yet occurred. Counsel will, consistent with Local Rule 3.01(g)(3), continue to diligently contact plaintiff's counsel seeking to confer.

/s/ Griffin Klema
Griffin C. Klema, Esq.
Fla. Bar No. 100279
Griffin@KlemaLaw.com
**Klema Law, P.L.**
PO Box 172381
Tampa, FL 33672
420 W. Kennedy Boulevard
Tampa, FL 33606
Telephone: 202-713-5292
*Counsel for Defendants*